UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JIANPING GUAN,

    Petitioner,

        v.                            CAUSE NO. 3:26-CV-192-CCB-SJF

PAMELA BONDI, et al.,

    Respondents.

## OPINION AND ORDER

Immigration detainee Jianping Guan, by counsel, filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in

violation of the laws or Constitution of the United States. ECF 1. The respondents have

answered the petition, and Guan has filed a reply. ECF 7, ECF 8. The petition is ready to

be decided.

## BACKGROUND

According to the petition, Guan is a 53-year-old citizen of China. On July 12,

1995, Guan entered the United States, and on, July 24, 1995, he left and returned to the

United States without inspection. In 2014, Guan was convicted of a criminal offense and

received a one-year sentence of incarceration. On October 6, 2015, an immigration judge

ordered him removed,[1] but, on February 11, 2016, Immigration and Customs

Enforcement (ICE) transferred custody of Guan to "another Federal Agency." ECF 7-1

---

[1] In briefing, the respondents incorrectly state that Guan was ordered removed in October 2025. ECF 7 at 2. This appears to be a clerical error that the respondents did not rely on for any argument.

at 2. In October 2017, ICE detained Guan but released him on an Order of Supervision in August 2018. *Id.* Guan complied with the terms of his supervised release. ECF 1. On October 17, 2025, ICE detained him during a regularly scheduled check-in. He is currently detained at the Miami Correctional Facility.

Guan contends that China has a decades-long policy of refusing to accept individuals for removal from the United States. He alleges there are between 40,000 and 100,000 Chinese nationals in the United States who have been ordered removed, but successful removals to China are extremely rare. He further alleges that recent reports from February 2025 indicate that the government has sent Chinese nationals to third countries, which suggests that the government is unable to remove individuals to China.

The respondents represent that the government has requested travel documents from China. ECF 7 at 3. However, for evidentiary support, they cite only to their status report, which states, "After consulting with DHS, Respondents report that travel documents have not been acquired for Petitioner to return to China, and that it is unlikely that he will be removed within the next thirty days." ECF 6.  In reply, Guan maintains that the only plausible explanation for releasing Guan in June 2018 is that the government could not obtain travel documents from China.

SUBJECT MATTER JURISDICTION

The respondents first argue that the court lacks subject matter jurisdiction over Guan's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration

2

detention. For the reasons previously stated, jurisdiction is secure. *See Vu v. English*, No. 3:25CV999 DRL-SJF, 2026 WL 194171, 2-3 (N.D. Ind. Jan. 26, 2026) (Leichty, J.) (discussing § 1252(b)(9) and § 1252(g)); *see also Kem v. Noem*, No. 3:25-CV-997-DRL-SJF, 2026 WL 100566, at *1 (N.D. Ind. Jan. 14, 2026) (Leichty, J.) (discussing § 1252(g)); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)), *appeal docketed* No. 26-1404 (7th Cir. Mar. 2, 2026).

## MERITS

Regarding the merits of the petition, the respondents first argue that Guan's detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[2] which for Guan ended a decade ago, continued detention is authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

---

[2] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

"*Zadvydas* and the relevant regulations do not address whether the six-month presumptive reasonability period is cumulative across periods of detention or whether the period restarts upon each instance of detention." *Singhavara v. Noem*, 2025 WL 3140712, at *3 (N.D. Ill. Nov. 10, 2025). However, "[m]ost courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (collecting cases) (quoted with approval in *Singhavara*, 2025 WL 3140712, at *3).

The court agrees with the reasoning and conclusions of the federal courts that have found the six-month period to apply cumulatively across initial and subsequent periods of detention. Applying a six-month period of presumptive reasonableness to every subsequent period of detention would go against the concerns in *Zadvydas*, which noted the broad language in § 1231(a) seemingly authorizes detention in violation of the noncitizen's due process rights. *Zadvydas*, 533 U.S. at 690. Just as "[a] statute permitting

4

indefinite detention of [a noncitizen] would raise a serious constitutional problem," *id.*, so, too, would a statute authorizing wholly discretionary re-detention of a noncitizen. *Zadvydas* declares that detention of a noncitizen past the "removal period" is not authorized by § 1231(a) if it is unrelated to the statutory goals of "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* Allowing the government a six-month period of unreviewable detention every time it re-detains a noncitizen does not advance those statutory goals.

Here, Guan's immediate period of detention spans only five months. However, ICE detained him following an order of removal for ten months from October 2017 until August 2018. Because Guan's cumulative time in detention exceeds six months, the court turns to whether his removal is reasonably foreseeable.

To start, the respondents identify China as the only country under consideration for removal. Guan represents that he was released on an Order of Supervision in August 2018, which suggests that a prior attempt to remove him to China failed. He further represents that China has a long policy of refusing to accept individuals for removal with reference to data suggesting that China continues this policy of refusal. His most recent term of detention now spans five months. The court finds that this showing suggests that China has and will refuse to accept Guan and constitutes good reason to believe that there is no significant likelihood of Guan's removal in the reasonably foreseeable future.

To rebut this showing, the respondents offer only a vague representation that the government has requested travel documents from China. This meager showing does

5

not persuade the court that Guan's removal is likely to occur within the reasonably foreseeable future. It does not explain why efforts to remove Guan will be successful now when they were unsuccessful in 2018. It does not explain why efforts to remove an individual to China will be successful when the government has historically struggled to remove individuals to China. It also does not adequately explain the delay in obtaining travel documents from China. Though this process may take some time, it is unclear why it remains uncompleted after five months of detention. Consequently, the court finds that Guan's removal is not reasonably foreseeable. Therefore, the respondents must release Guan.

Guan also seeks a permanent injunction prohibiting the respondents from-detaining him in the future unless they have clear and convincing evidence that removal to China has become imminently feasible. Habeas allows for equitable remedies and allows courts "to fashion appropriate relief other than immediate release." *Peyton v. Rowe*, 391 U.S. 54, 66 (1968). But the custody requirement is absolute, *see Maleng v. Cook*, 490 U.S. 488, 492 (1989) ("While we have very liberally construed the "in custody" requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction."), even if that custody is in the future, *see Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[T]he writ is available as well to attack future confinement and obtain future releases."). Here, Guan raises only the speculative possibility of future confinement, so the court declines to grant a permanent injunction.

For these reasons, the court:

(1) **PARTIALLY GRANTS** the petition for writ of habeas corpus (ECF 1) and ORDERS the respondent to release Jianping Guan on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **March 20, 2026**;

(2) **DIRECTS** the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(3) **ORDERS** that any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED on March 19, 2026

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

7